IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

VICTOR M. RIVERA-RAMOS,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

CIVIL NO.: 10-1102 (JAG)

**REPORT AND RECOMMENDATION**

## I.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Víctor M. Rivera-Ramos ("plaintiff" or "claimant") was born on March 28, 1949.

(Tr. 62.)  He has a 9th grade education and worked as a machine operator at a bottle-making factory

from 1978 to July 24, 2001, when the factory closed and he was laid off.  (Tr. 71, 75, 220.)  Plaintiff

alleges that he suffers from back pain, several hernias and high blood pressure, as well as depression

caused by his inability to find another job.  (Tr. 70, 114, 220.)

On January 21, 2005, plaintiff filed an administrative claim for a period of disability and

disability insurance benefits, alleging disability beginning July 24, 2001.  (Tr. 16, 62-64.) Plaintiff

later requested that the onset date be changed to August 26, 2004, reflecting the date plaintiff began

receiving psychiatric treatment for his depressive disorder.[1]  (Tr. 16, 50-52.)  Plaintiff's application

for social security benefits was denied initially as well as on reconsideration.  (Tr. 16, 35-39, 43-49.)

_____

[1] While the ALJ opinion states that the onset change was changed to March 26, 2004, this appears to be a
typographical error.  (Tr. 16, 51.)

1

After plaintiff's timely request was granted, a hearing took place before an Administrative Law Judge ("ALJ") on September 10, 2007.  (Tr. 16, 215-34.)  Plaintiff attended the hearing with a non-attorney representative and testified regarding his alleged disability.  (Tr. 215-34.)  On January 11, 2008, the ALJ rendered a decision denying plaintiff's claim.  (Tr. 10-25.)  The Appeals Council denied plaintiff's request for review of the ALJ's decision on December 11, 2009; therefore, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner" or "defendant").  (Tr. 3-7.)

On February 9, 2010, plaintiff filed a complaint in this case seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), claiming that the ALJ's decision was not based on substantial evidence.  (Docket No. 1.)  On July 16, 2010, defendant filed both an answer and a certified transcript of the administrative record.  (Docket Nos. 6; 7.)  Both parties have submitted supporting memoranda.  (Docket Nos. 9; 11.)  The motion was subsequently referred to the undersigned for a report and recommendation.  (Docket Nos. 13; 14.)

## II.    LEGAL ANALYSIS

### A.    Legal Standard

Section 205(g) of the Social Security Act provides, *inter alia*, that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," and that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).

"In Social Security cases, the [c]ourt must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual

error." <u>López-Vargas v. Comm'r of Soc. Sec.</u>, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (<u>citing</u> <u>Manso-Pizarro v. Sec'y of Health & Human Servs.</u>, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)). The Commissioner's "findings of fact are conclusive when supported by substantial evidence in the record, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (<u>citing Da Rosa v. Sec'y of Health & Human Servs.</u>, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); <u>Ortíz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." <u>Hernández-Guzman v. Astrue</u>, 2009 U.S. Dist. LEXIS 99213, at *5 (D.P.R. Oct. 23, 2009) (<u>quoting Ginsburg v. Richardson,</u> 436 F.2d 1146, 1148 (3d Cir. 1971), <u>cert. denied</u>, 402 U.S. 976). Moreover, the First Circuit has held that a determination of substantiality must be made based on the record as a whole. <u>See Ortíz</u>, 955 F.2d at 769. However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." <u>Ortíz</u>, 955 F.2d at 769 (<u>citing Quiñones v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981)). "The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the reviewing [c]ourts." <u>López-Vargas</u>, 518 F. Supp. 2d at 335 (<u>citing Perales</u>, 402 U.S. at 399). Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." <u>Quiñones Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled with the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137, 146n.5, 146-47 (1987).  It is well settled that a claimant is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A).  The statute provides, in pertinent part, that:

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Claims for disability benefits are evaluated according to the five-step sequential evaluation process prescribed by Social Security regulations.  20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140-42.

> Through step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If he/she is, disability benefits are denied.  20 C.F.R. §§ 404.1520(b).  If he/she is not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments.  See 20 C.F.R. §§ 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1.  If the

4

impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing work he/she has performed in the past.  If the claimant is able to perform his/her previous work, ... he/she is not disabled.  20 C.F.R. § 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether the claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience.  The claimant would be entitled to disability benefits only if he/she is not able to perform other work. 20 C.F.R. § 404.1520(f).

Sosa v. Comm'r of Soc. Sec., 550 F. Supp. 2d 279, 284 (D.P.R. 2008).

"The claimant has the burden, under steps one through four, of proving that he cannot return to his former employment because of the alleged disability.  Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform."  Berríos Velez v. Barnhart, 402 F. Supp. 2d 386, 390 (D.P.R. 2005) (citing Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991) (per curiam); Ortíz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam)).

**B.    The ALJ's Findings**

After evaluating the evidence on record, the ALJ made the following findings:

1.  "The claimant last met the insured status requirements of the Social Security Act on December 31, 2006."

2.  "The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 26, 2004 [sic] through his date last insured of December 31, 2006 (20 C.F.R. § 404.1520(b) and § 404.1571, *et seq.*)."

5

3.  "Through the date last insured, the claimant had the following severe impairments: chronic lumbar musculoskeletal pain and depression (20 C.F.R. § 404.1520(c))."

4.  "Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526)."

5.  "[T]hrough the date last insured, the claimant had the residual functional capacity to perform medium work (the physical residual functional capacity to lift/carry 50 pounds occasionally and 25 pounds frequently).  He can sit and stand/walk for six hours in an eight hour workday.  He is not limited in pushing or pulling (including the operating of foot or hand controls) with his upper and lower extremities.  He has no postural, manipulative, visual, communicative, or environmental limitations.  From the mental standpoint, he is able to learn, understand, remember, and carry a [sic] simple, but not complex instructions; he can maintain attention and concentration for at least two hour intervals; he is able to respond appropriately to changes in the work setting and environment; and he is able to interact with others, such as coworkers and supervisors."

6.  "Through the date last insured, the claimant's past relevant work as a machine operator did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565)."

7.  "The claimant was not under a disability as defined in the Social Security Act, at any time from March 26, 2004 [sic], the alleged onset date, through December 31, 2006, the date last insured (20 C.F.R. § 404.1520(f))."

(Tr. 18-25.)

6

### C.    The Medical Evidence Contained in the Record

The certified administrative record contains, *inter alia*, the following medical evidence regarding plaintiff's physical conditions:

Dr. Juan de los Santos Balasquide ("de los Santos-Balasquide"), who treated plaintiff since at least 1999, indicated in two medical reports that plaintiff suffered from, among other things, anxiety, depression, insomnia, headaches, low back pain, and abdominal pain.[2] (Tr. 189, 192.)  The reports further state that plaintiff had limited motion in both his legs and shoulders.[3] (Tr. 191, 194.) Dr. de los Santos-Balasquide concluded that plaintiff was completely disabled from any gainful work due to his mental and physical impairments.  (Tr. 191, 194.)

Dr. Zaida Boria, a consulting neurologist, evaluated plaintiff on April 25, 2005, and found him to be "[a]lert", "[w]ell oriented in time, place and person", and that he demonstrated "[g]ood recent and past memory" and was "[r]elevant, coherent and cooperative."  (Tr. 141-45, 172-75, 180-83.)  Dr. Boria indicated that plaintiff's gait and posture was normal, and that he demonstrated 5/5 bilateral strength in both the upper and lower extremities.  (Tr. 174.)  Dr. Boria found plaintiff to have lumbar pain with restriction in range of motion, leading to a diagnosis of chronic lumbar musculo-skeletal pain, but concluded that plaintiff could sit, stand, walk, travel, and handle and lift common objects.  (Tr. 183.)

In May 2005, internist Dr. Idalia Pedroza López ("Pedroza-López ") prepared a physical residual functional capacity ("RFC") assessment based on all the evidence in claimant's file.  (Tr.

---

[2]Plaintiff claims that Dr. de los Santos-Balasquide treated plaintiff for his physical conditions since 1995 (Docket No. 11, p. 6), but the physician's records indicate that treatment began in 1999.  (Tr. 189-94.)

[3]Dr. de los Santos-Balasquide's reports also note that plaintiff was very depressed, suffered from memory defects and insomnia, and that his mental condition affected his mood and intellect.  (Tr. 191, 194.)  However, due to the limited medical records submitted by plaintiff regarding  Dr. de los Santos-Balasquide's treatment, it is unclear whether the physician treated plaintiff for this condition or on what basis he drew these conclusions.  (Tr. 191, 194.)

164-71.)  Dr. Pedroza-López concluded that plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally, and could sit, stand or walk for about 6 hours in an 8-hour workday.  (Tr. 165.)  Dr. Pedroza-López further indicated that plaintiff's physical condition did not result in any postural, manipulative or environmental restrictions.  (Tr. 164-66.)  Dr. Pedroza-López's assessment was confirmed by Dr. Osvaldo Rivera Marrero ("Rivera-Marrero").  (Tr. 171.)

The administrative record also contains, *inter alia*, the following medical evidence regarding plaintiff's mental conditions:

Plaintiff was treated by Dr. Luis A. Escabi Pérez ("Escabi-Pérez") from August 2004 through at least July 2007 for an emotional condition consisting of anxiety, nervousness, depression and panic to open spaces.  (Tr. 109.)  Dr. Escabi-Pérez diagnosed plaintiff with a "major depressive disorder of severe intensity" in 2004, characterized by "psychomotor retardation, poor self esteem, shortened attention span, poor concentration, poor results [in] memory tests, frequent blocks, and suicidal idea[tions]".[4]  (Tr. 109, 176.)  Dr. Escabi-Pérez also found plaintiff unable to keep schedule, maintain proper attendance, make decisions, complete tasks, or interact with supervisors, and concluded that he could not complete a normal workday, focus his attention, or persist "even at simple tasks."  (Tr. 179.)  Plaintiff was prescribed the following medication: Paxil 20 mg, Ambien 10 mg, Klonopin 1 mg (twice a day), and Seroquel 25 mg.  (Tr. 109-110.)  Dr. Escabi-Pérez noted that plaintiff has never been hospitalized for his emotional condition.  (Tr. 110.)  He also stated that plaintiff could not manage his funds.  (Tr. 111.)

---

[4]A July 2007 psychiatric evaluation by Dr. Escabi-Pérez suggests that plaintiff was also diagnosed with a "panic disorder with agoraphobia" in 2004, noting that plaintiff suffered from several "panic episodes" per week.  (Tr. 109.) However, the medical reports included in Dr. Escabi-Pérez's file do not reflect such a diagnosis and – in fact – explicitly state that plaintiff did not suffer a panic attack episode during the preceding months.  (Tr. 176-79, 184-88, 209-13.) Therefore, it is unclear based on the record whether plaintiff suffered from this condition and if so, during what period of time.  Moreover, plaintiff does not specifically claim in his memorandum that the ALJ erred in failing to take this condition into account in making his determination.  (Docket No. 11.)

In July 2005, consulting psychiatrist Dr. Luis Vecchini prepared a mental RFC assessment and a psychiatric review technique form, evaluating plaintiff's plaintiff's affective disorder. (Tr. 146-63.) Dr. Vecchini concluded that plaintiff's condition resulted in moderate limitations in the ability to understand, remember and carry out detailed instruction; to maintain attention and concentration for extended periods, to perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public, and to accept instructions and respond appropriately to criticism from supervisors. (Tr. 146-47.) Dr. Vecchini otherwise found plaintiff's abilities not to be significantly limited. Id. Dr. Vecchini also found that "[mental examination] shows depression and psychomotor retardation, diminished attention and concentration. [Plaintiff] is able to remember and carry out simple instructions but not complex ones. Can sustain attention for 2 hour intervals. Can interact with supervisors." (Tr. 148.) Dr. Vecchini's assessment was confirmed by Dr. Carmen Piñeiro. (Tr. 147, 162.)

### D. Plaintiff's Objections to the Commissioner's Decision

The findings of the Commissioner reflect an application of step four of the sequential evaluation process, in which the plaintiff must demonstrate that he can no longer perform his former work due to his impairments. See 20 C.F.R. § 404.1520(e); Manso-Pizarro, 76 F.3d at 17. In denying plaintiff's claim under this step, the ALJ first determined that plaintiff has:

> the residual functional capacity to perform medium work (the physical residual functional capacity to lift/carry 50 pounds occasionally and 25 pounds frequently). He can sit and stand/walk for six hours in an eight hour workday. He is not limited

in pushing or pulling (including the operating of foot or hand controls) with his upper and lower extremities.  He has no postural, manipulative, visual, communicative, or environmental limitations.   From the mental standpoint, he is able to learn, understand, remember, and carry a [sic] simple, but not complex instructions; he can maintain attention and concentration for at least two hour intervals; he is able to respond appropriately to changes in the work setting and environment; and he is able to interact with others, such as coworkers and supervisors.

(Tr. 23.)  The ALJ found that plaintiff's past relevant work as a machine operator in a bottle-making factory as generally performed in the economy required medium exertion, and – as performed by plaintiff – light exertion.  (Tr. 25.)  Comparing the "[RFC the [plaintiff] had, as of the date last insured, with the physical and mental demands of [his] work," the ALJ concluded that plaintiff was able to perform his past relevant work "as it was actually and generally performed," and thus denied plaintiff's claim.  (Tr. 25.)

Plaintiff contends that he is incapable of performing past relevant work, and that the ALJ's decision was not based on substantial evidence because it failed to grant proper weight to the findings of plaintiff's treating psychiatrist, Dr. Escabí-Pérez, and because the ALJ did not take plaintiff's mental limitations into account in finding plaintiff capable of performing his former work as a machine operator.  (Docket No. 11, pp. 9-31.)  Plaintiff also argues that the ALJ should have questioned a vocational expert as to whether plaintiff could perform past relevant work or alternative work in the national economy.  (Docket No. 11, pp. 16-17, 30.)  As plaintiff's memorandum only concerns the ALJ's determinations regarding his mental impairments, the ALJ's findings as to plaintiff's physical impairments will not be addressed herein.  (Docket No. 11.)

Dr. Escabí-Pérez's Medical Opinion

Plaintiff claims that the ALJ erred in not granting more weight to the findings of treating psychiatrist Dr. Escabí-Pérez, who diagnosed plaintiff with a "major depressive disorder of severe

10

intensity" in 2004, characterized by "psychomotor retardation, poor self esteem, shortened attention span, poor concentration, poor results [in] memory tests, frequent blocks, and suicidal idea[tions]". (Docket No. 11, p. 14); (Tr. 109, 176.)   Dr. Escabi-Pérez also found plaintiff unable to keep schedule, maintain proper attendance, make decisions, complete tasks, or interact with supervisors, and concluded that he could not complete a normal workday, focus his attention, or persist "even at simple tasks."   (Tr. 179.)   In a July 2007 psychiatric evaluation, Dr. Escabi-Pérez determined plaintiff's mental impairments to be "totally disabl[ing]", leaving him unable "to perform his gainful work."   (Tr. 111.)

As an initial matter, conclusions as to whether a claimant is "disabled" and related legal conclusions are administrative determinations that are to be made by the Commissioner, not by medical personnel.   20 C.F.R. § 404.1527(e); see Rivera v. Comm'r of Soc. Sec., 2010 U.S. Dist. LEXIS 1493, at *14-*16 (D.P.R. Jan. 8, 2010) ("while [his physician] believed that [c]laimant was disabled and unable to work, disability under the Act is a legal determination that is reserved to the ALJ, and medical experts are not qualified to render this ultimate legal conclusion.") (citing Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003) (internal citation omitted)).   Therefore, the ALJ's decision not to grant any "special significance" to Dr. Escabi-Pérez's conclusions as to plaintiff's disability should not be the basis for overturning the Commissioner's resolution.[5]  (Tr. 21); see 20 C.F.R. § 404.1527(e).

---

[5]While not addressed in plaintiff's memorandum, the ALJ also declined to grant controlling weight to plaintiff's treating physician Dr. de los Santos-Balasquide's opinion that plaintiff was "complete[ly]" disabled from any gainful employment due to his mental and physical conditions. (Tr. 21, 191.) As stated above, legal determinations are reserved for the ALJ, not medical personnel.  See 20 C.F.R. § 404.1527(e).  Furthermore, Dr. de los Santos-Balasquide's file, which is limited to two general medical reports, does not contain adequate documentation to support the physician's findings, especially in light of the fact that the physician's determination was based in part on plaintiff's mental condition, for which it is unclear whether Dr. de los Santos-Balasquide was treating plaintiff.  See SSR 96-2p, 1996 SSR LEXIS 9; (Tr. 189-94.)

As to Dr. Escabí-Pérez's medical opinions, the ALJ will "give controlling weight to the opinions of treating physicians if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record." Berrios-Velez, 402 F. Supp. 2d at 391 (citing 20 C.F.R. § 404.1527(d)(2)); see Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9.  However, "when a treating doctor's opinion is inconsistent with other substantial evidence in the record, the requirement of 'controlling weight' no longer applies."  Id. (citations omitted).  In cases where a treating physician's opinion is not deemed conclusive, the ALJ must still give it weight based on a number of factors, including: the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, the degree to which the opinion is supported by medical signs and laboratory findings, the consistency of the opinion with the record as a whole, and whether the opinion was from a specialist.  20 C.F.R. § 404.1527(d)(2)-(5).

In the present case, the ALJ declined to give Dr. Escabí-Pérez's opinion controlling weight, citing, among other things, 1) conflicting findings by other medical experts, 2) a lack of diagnostic evidence in the record supporting the psychiatrist's opinion, and 3) the fact that plaintiff never received emergency treatment or was advised to seek hospitalization for his mental condition.  (Tr. 21); see SSR 96-2, 1996 SSR LEXIS 9.  A review of the record supports the ALJ's findings.

Dr. Boria, a consulting neurologist, evaluated plaintiff in April 2005 and found him to be "[a]lert", "[w]ell oriented in time, place and person", and that he demonstrated "[g]ood recent and past memory" and was "[r]elevant, coherent and cooperative." (Tr. 173.) Such a finding conflicts with Dr. Escabí-Pérez's indications in a May 2005 psychiatric medical report that plaintiff was

"easily distracted, "unable to focus attention", exhibited "poor concentration," scored poorly on memory tests, and was oriented as to person and place, but not time.  (Tr. 186.)

The findings of consulting psychiatrist Dr. Vecchini, who examined plaintiff in July 2005, match those of Dr. Escabi-Pérez in several respects, including finding that plaintiff suffered from "depression and psychomotor retardation, [and] diminished attention and concentration." (Tr. 148.) However, while Dr. Escabi-Pérez found plaintiff unable to "persist even at simple tasks", interact with supervisors, or "focus his attention," Dr. Vecchini found plaintiff "able to remember and carry out simple instructions but not complex ones ... sustain attention for 2 hour intervals ... [and] interact with supervisors."[6]  (Tr. 148, 179.)  The ALJ's determination as to plaintiff's mental RFC reflects Dr. Vecchini's findings.  (Tr. 23.)

While the ALJ stated that the record did not include "any treatment/progress notes or other objective psychological test results to corroborate [Dr. Escabi-Pérez's] opinions/conclusions," the record contains – in addition to Dr. Escabi-Pérez's July 2007 psychiatric evaluation – several support psychotherapy "follow-up notes" regarding the psychiatrist's treatment of plaintiff and three psychiatric medical reports summarizing the findings of plaintiff's monthly sessions.  (Tr. 109-11, 116-18, 129, 131, 133, 135, 176-79, 184-88, 209-13.)  However, the "follow-up notes" only list plaintiff's diagnosis and medications and indicate via check boxes plaintiff's complaints and symptoms, and are therefore of limited evidentiary value in corroborating Dr. Escabi-Pérez's

---

[6] As noted in his psychiatric review, Dr. Vecchini also found plaintiff to be moderately restricted as to his daily living, social function, concentration, and persistence and pace, without any episodes of decompensation.  (Tr. 160.) In a mental RFC assessment, Dr. Vecchini indicated that plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaptation were all either "not significantly limited" or "moderately limited." (Tr. 146-47.)  However, as Dr. Escabi-Pérez did not submit either a psychiatric review technique form or a mental RFC assessment, it is difficult to draw any conclusions as to the extent the two psychiatrists' opinions differed as to these findings.

findings.  (Tr. 116-18, 129, 131, 133, 135.)  As for the psychiatric medical reports, while the reports do include plaintiff's results on several memory and concentration tests, many of Dr. Escabí-Pérez's other findings are conclusory.  (Tr. 176-79, 184-88, 209-13.)  In any event, the ALJ took plaintiff's memory and concentration limitations into account in determining that plaintiff could "carry a [sic] simple, but not complex instructions." (Tr. 23.)

Given Dr. Boria's and Dr. Vecchini's findings indicating that plaintiff suffered from either minimal or minor mental limitations, and the lack of diagnostic evidence corroborating Dr. Escabí-Pérez's opinions or otherwise supporting a finding of severe limitation, the ALJ's decision not to grant Dr. Escabí-Pérez's opinion controlling weight – and to instead "[accord] it only the weight merited by the overall evidence" – should be found to have been based on substantial evidence.  See SSR 96-6p, 1996 SSR LEXIS 3 ("the opinion of a State agency medical ... consultant ... may be entitled to greater weight than a treating source's medical opinion if the State agency medical ... consultant's opinion is based on a review of a complete case record ....").

Plaintiff's Past Relevant Work

Plaintiff also contends that the ALJ erred in determining that plaintiff's RFC allowed him to perform his past relevant work as "actually and generally performed," claiming that the ALJ failed to properly account for the mental demands of the job.  (Tr. 25); (Docket No. 11, pp. 2, 9, 11.)  Specifically, plaintiff argues that the ALJ was required to perform a function-by-function comparison of plaintiff's RFC to his past relevant work.  (Docket No. 11, pp. 11, 24-25.)

Such a comparison was not required.  SSR 82-62 – cited by plaintiff – requires that a disability decision give a "clear picture of the case," following an "orderly pattern" that shows how "specific evidence leads to a conclusion."  1982 SSR LEXIS 27, at *9.  "For a claim involving a

14

mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." Id. at * 8-*9.

While the ALJ opinion does not explicitly delineate the mental requirements of plaintiff's past relevant work as a machine operator at a bottle-making factory, the record contains the following description by plaintiff of his duties:

> I had rotative [sic] shifts.  First I cleaned the operation's machine with special sprays and clothes [sic].  I received an order of the type of bottle that the machine must prepared [sic] based in [sic] the clients's [sic] requests.  I collected the bottles and put into carton boxes (about 80 per case) until the request [was] completed (around 1000 per request).   The machine processed around 30 to 40 requests per day.   The supervisor advised me if the amount of cases were complete, any change of where to put the cases or the amount and types of the cases of the plastic's bottles need for the completion of the order.  In occasions [sic] I put the information to the machine of the type, size and profundity of the plastic's [sic] bottle.

(Tr. 71.)  Plaintiff also indicates that the job required the use of machines, tools or equipment, but did not require any technical knowledge, skills, or writing.  Id.

Plaintiff argues that given the fast-paced nature of plaintiff's past relevant work, the ALJ erred in failing to take into consideration plaintiff's mental limitations, specifically his limited attention span and psychomotor retardation, caused by his depression.  (Docket No. 11, pp. 2-4, 20-25.)  However, while plaintiff claims in his memorandum that the placing of "30 to 40 thousand bottles in cartons per day ... obviously had to be fast paced" and stressful, it is not clear from the above description that plaintiff was solely responsible for filling all 30 to 40 requests daily, and, in any event, there is no evidence demonstrating how difficult, time-consuming or stressful such a task was to complete.  (Docket No. 11, pp. 2-3, 23); see SSR 82-62, 1982 SSR LEXIS 27 at *6 ("[t]he

claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and nonexertional demands of such work."). Furthermore, the ALJ opinion specifically addresses plaintiff's limited attention span in its determination of plaintiff's mental RFC, stating that plaintiff "can maintain attention and concentration for at least two hour intervals." (Tr. 23.) The ALJ opinion also addresses, albeit in summary fashion, plaintiff's other depression-related symptoms, including psychomotor retardation and stress, stating that plaintiff's allegations of "severe and disabling impairment-related symptoms and other subjective complaints" are "unsupported by the preponderance of the objective medial [sic] findings, which fail to establish severe or advanced physical or mental pathology, by claimant's conserved daily activities and function, by claimant's demeanor through the record, by statements and assessments from examining and evaluating sources, and by other evidence of the record." (Tr. 24.) Coupled with the ALJ's finding that plaintiff suffered from no "manipulative" limitations, the ALJ thus determined that to the extent plaintiff suffered from psychomotor retardation and/or a limited attention span due to depression, such symptoms did not rise to the level of affecting plaintiff's ability to perform his past relevant work. (Tr. 23.) In light of the foregoing, the ALJ's findings should be found to have been based on substantial evidence.

Vocational Expert

Finally, plaintiff claims that the ALJ should have enlisted the assistance of a vocational expert to determine whether plaintiff was capable of performing past relevant work, and, if not, whether he could perform other work in the national economy. (Docket No. 11, pp. 17, 30.) However, the First Circuit has stated "at step 4 of the disability determination process ... the ALJ is

16

not required to elicit the testimony of a vocational expert." <u>Santos Martinez v. Secretary of Health & Human Services</u>, No. 94-2152, 1995 U.S. App. LEXIS 10434, at *5 (1st Cir. May 9, 1995)(per curiam, unpublished); <u>Santiago v. Commissioner of Social Security</u>, No. 97-2088, 1998 U.S. App. LEXIS 5374, at *3 (1st Cir. March, 18, 1998) (per curiam, unpublished); <u>see also</u> <u>Musgrave v. Sullivan</u>, 966 F.2d 1371, 1376 (10th Cir. 1992) (holding that because claimant failed to meet his burden of establishing a disability that prevented him from performing his past relevant work, "the ALJ was under no obligation to elicit the testimony of a vocational expert").   Furthermore, as the ALJ determined that plaintiff was able to perform past relevant work, the fifth step of the analysis – in which it is determined whether plaintiff can perform other work in the economy – was never reached.  <u>See</u> 20 C.F.R. § 404.1520(f).  Therefore, the ALJ's decision not to enlist the aid of a vocational expert was not erroneous based on the evidence on the record.

## III.   CONCLUSION

Based on the foregoing, the Commissioner's determinations should be found to have been based on substantial evidence.  Therefore, it is RECOMMENDED that the Commissioner's decision denying plaintiff's claim be AFFIRMED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this report and recommendation.  Fed R. Civ. P. 72(b); <u>Henley Drilling Co. v. McGee</u>, 36 F.3d 143, 150-151 (1st Cir. 1994); <u>United States v. Valencia</u>, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 16th day of March, 2011.

s/Marcos E. López
U.S. Magistrate Judge